IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DARREL C. ARMSTRONG,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | CV 13–94–M–DWM-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Darrel Armstrong brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-434, §§ 1381-1385. Armstrong alleges disability since March 31, 2006 due to depression, attention deficit hyperactivity disorder (ADHD), a stress disorder, and seizures. (Tr. 20, 153-67, 213). Armstrong's application was denied initially and on reconsideration, and he requested a hearing which took place on August 8, 2011. (Tr. 36-90; 95-100; 103-07). Armstrong appeared with counsel at his hearing, and on December 5, 2011, the ALJ issued a decision finding that

Armstrong was not disabled within the meaning of the Act. (Tr. 20-29). The Appeals Council denied Armstrong's subsequent request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Armstrong was 55 years old at the time of his alleged onset date, and 60 years old at the time of the ALJ's decision. (Tr. 28, 153).

I.  **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court "may not substitute its judgment for that of the Commissioner."  *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.  Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears the burden of establishing disability at steps one through four of this process.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Armstrong met the insured status requirements of the Act through June 30, 2009, and had not engaged in substantial gainful activity since his March 31, 2006, alleged onset date. (Tr. 22). At step two, the ALJ found that Armstrong had the following severe impairments: depression, ADHD, and a probable personality disorder.[1] (Tr. 22). The ALJ

---

[1] Armstrong argues the ALJ erred by not including "dorsal heel spurs" as a severe impairment. For support, he cites to pages 209, 617 and 670 of the administrative record. There is no mention of heel spurs on page 209, and pages 617

-4-

concluded at step three that Armstrong did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 23). The ALJ also found that while Armstrong's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects" of those symptoms were not entirely credible. (Tr. 26). The ALJ found that Armstrong could perform a range of medium work, and that there were jobs in significant numbers in the national economy that he could perform, including work as a vehicle cleaner, industrial cleaner, cook helper, hand packager, and kitchen helper. (Tr. 28-29).

Armstrong argues the ALJ erred because she did not provide legally adequate reasons for discounting various medical opinions and for finding him not credible.

### A. Medical Opinions

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing

---

and 670 do not exist, as the record in this case contains only 472 pages.

physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

1. <u>Dr. Cheryl Van Denburg</u>

Armstrong argues the ALJ did not provide adequate reasons for rejecting the opinion of Dr. Cheryl Van Denburg, a psychologist at the University of Montana's Curry Health Center who saw Armstrong eight times between

December 2006 and December 2007.

In July 2011, Dr. Van Denburg completed a mental residual functional capacity questionnaire. (Tr. 407-11). Dr. Van Denburg wrote that Armstrong had not been able to manage the stress of attending the University of Montana, and was not able to organize and complete his assignments. (Tr. 409-10). She indicated that Armstrong would be unable to meet competitive standards in regular attendance, punctuality, dealing with normal work stress, setting realistic goals, and dealing with the stress of semiskilled or skilled work. (Tr 409-10).

Armstrong argues the ALJ did not provide sufficiently specific and legitimate reasons for discounting Dr. Van Denburg's July 2011 assessment.[2] The ALJ considered Dr. Van Denburg's opinion but gave it little weight because it was not consistent with the medical evidence as a whole. (Tr. 27). The entirety of the ALJ's discussion regarding Dr. Van Denburg's opinion reads as follows:

> Little weight is given to the Cheryl Van Denburg, Ph.D, who found that the claimant is unable to meet competitive standards in setting realistic goals and dealing with the stress of semi-skilled and skilled work. This is inconsistent with the medical evidence as a whole."

(Tr. 27).

---

[2] Because Dr. Van Denburg's opinion was contradicted by that of the state agency reviewing physician (Tr. 332-45 ) and examining psychologist Dr. Susan Day (Tr. 309-13) the ALJ could reject it for specific and legitimate reasons. *See Bray v. Commissioner*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009).

The ALJ's statement that Dr. Van Denburg's opinion was "inconsistent with the medical evidence as a whole" falls short of the specific and legitimate reasons necessary to reject the controverted opinion of a treating physician. The ALJ simply concluded, without any explanation whatsoever, that Dr. Van Denburg's opinion was not consistent with the medical evidence. But the ALJ made no effort to identify what evidence in the record was inconsistent with Dr. Van Denburg's opinion. For the ALJ to simply say that a medical opinion is not consistent with the medical evidence does not by itself achieve the level of specificity required by the Ninth Circuit. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Embrey*, 849 F.2d at 421-22; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). *See also Garrison v. Colvin*, — F.3d —, 2014 WL 3397218 *14 (9th Cir. 2014) (An ALJ errs if she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion."). The ALJ's boilerplate statement that Dr. Van Denburg's opinion was not consistent with the medical evidence was insufficient.

2. Dr. Heather Maddox

Armstrong maintains the ALJ erred by rejecting the opinion of treating physician Dr. Heather Maddox. Armstrong established care with Dr. Maddox in July 2009, and saw her again twice in October 2009. (Tr. 322, 318, 320).

On October 15, 2009, Dr. Maddox wrote a letter in support of Armstrong's disability application. She stated that Armstrong had "several medical issues that affect his ability to sustain employment." (Tr. 325). Dr. Maddox explained that Armstrong's education and background is in surveying and feels he would be a danger to himself and others based on his history." (Tr. 325). In closing, Dr. Maddox wrote that "based on [Armstrong's] history and the several visits I have had with him, it is my opinion that his medical issues described above would be worsened with physical work." (Tr. 325).

The ALJ considered Dr. Maddox's written opinion but gave it little weight because it "contrasts sharply with the other evidence of record, which renders it less persuasive. Moreover, the specific objective findings needed to support the level of restrictions noted are not documented." (Tr. 27).

This general statement was not a sufficiently specific and legitimate reasons for discounting Dr. Maddox's opinion. While this Court might well be able to provide reasons of its own for discounting Dr. Maddox's opinion, and that of Dr.

Van Denburg, the Ninth Circuit has made clear that reviewing courts are "constrained to review the reasons the ALJ asserts" and should not engage in an independent analysis of the medical records. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). It would be error for this Court to identify reasons for rejecting these medical opinions that could have been provided by the ALJ, but were not. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1054 (9th Cir. 2006). *See also Pinto v. Massannari*, 249 F.3d 840, 847 (9th Cir. 2001) (a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). The ALJ erred because he did not provide specific and legitimate reasons for discounting the opinions of Dr. Maddox and Dr. Van Denburg.

While "[a] decision of the ALJ will not be reversed for errors that are harmless," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), the Court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting that [evidence], could have reached a different disability determination." *Stout v. Commissioner Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court cannot say with confidence that no reasonable ALJ, when fully crediting these medical opinions, could have reached a different disability

determination. Consequently, the ALJ's failure to properly reject this evidence cannot be viewed as harmless and this case should be remanded.

### E. Other Medical Sources

Armstrong argues the ALJ erred by not giving more weight to the opinion of physician assistant Douglas Marbarger, who saw Armstrong four times in 2011. (Tr. 437, 445, 448, 452).

In his briefing before the Court, Armstrong refers to Marbarger as a treating physician. But the record reflects that Marbarger is a physician assistant. (Tr. 437). As a physician assistant, Marbarger does not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); SSR 06-3p. Only acceptable medical sources can render medical opinions. SSR 06-3p; 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Information from "other sources" may nevertheless "provide insight into the severity of the impairment and how it affects the individual's ability to function." SSR 06-3p. The ALJ must provide "germane" reasons for discounting an "other source" opinion like Marbarger's. *Valentine v Commissoner SSA*, 574 F.3d 685, 694 (9th Cir. 2009); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The ALJ should evaluate opinion evidence from "other

sources," and in doing so consider such factors as how long the source has known the claimant, how frequently the source has seen the individual, whether the opinion is consistent with other evidence, how well the source explains the opinion, the degree to which the source presents relevant evidence to support the opinion, and whether the source has an area of expertise related to the individual's impairment. SSR 06-3p.

In August 2011, Marbarger completed a questionnaire provided by Armstrong's counsel. Marbarger indicated that Armstrong would not be able to perform medium work on a full time, sustained basis because "he would likely have difficulty exerting 20-50 pounds of force in terms of fatigue and dizziness." (Tr. 470).

The ALJ considered Marbarger's opinion but gave it little weight because "the specific objective findings needed to support the level of restrictions noted are not documented." (Tr. 27). This was not a sufficiently germane reason for discounting Marbarger's opinion. The ALJ did not consider any of the factors set forth in SSR 06-3p, and did not discuss Marbarger's treatment notes or otherwise elaborate on why she chose not to accept Marbarger's opinion that Armstrong would not be capable of medium work.

### C. Nonexertional limitations

Armstrong also argues the ALJ erred by finding that he suffers from severe mental impairments at step two, but then failing to incorporate any nonexertional mental limitations into his residual functional capacity assessment.

The Commissioner points out in response that all of the jobs the ALJ found Armstrong capable of performing were unskilled positions. (Tr. 29). The Commissioner argues the ALJ adequately accommodated Armstrong's mental impairments by effectively limiting him to unskilled work.

But the ALJ did not limit Armstrong to unskilled work when assessing his residual functional capacity. Nor did the ALJ incorporate any other restrictions to account for the effects of Armstrong's depression and ADHD. Whether the ALJ meant to accommodate Armstrong's mental impairments by limiting him to unskilled work is not clear. Thus, on remand, the ALJ should clarify the effect of Armstrong's mental impairments on his residual functional capacity.

### C. Credibility

Armstrong argues the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. The Court agrees.

If the ALJ finds "the claimant has presented objective medical evidence of

an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Armstrong met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some symptoms and the ALJ did not find that he was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding Armstrong subjective testimony only partially believable.

Armstrong testified that he would be unable to work because of fatigue, seizures, dizziness, and a myriad of other symptoms. (Tr. 65, 67). He said he feels dizzy every day, and has frequent anxiety attacks and stomach pain. (Tr. 65-67). Armstrong claimed that his impairments limited his ability to lift, squat, bend, stand, walk, kneel, climb stairs, see, remember things, complete tasks, understand, follow instructions, use his hands, and get along with others. (Tr. 207).

The ALJ found Armstrong testimony not credible in large part based on

evidence of his daily activities. In particular, the ALJ pointed to evidence that Armstrong "attends to his personal care needs, takes graduate anthropology classes, prepares meals, cleans, does laundry, makes household repairs, walks, drives, rides a bike, shops, pays bills, counts change, handles a savings account, uses a checkbook, uses a computer, and spends time with others." (Tr. 26, 201-15). While this may well have been a legitimate reason for questioning Armstrong's credibility, it was not enough, by itself, to sustain her adverse credibility finding. The only other reason provided by the ALJ for discounting Armstrong's testimony was that "the objective findings in this case fail to provide strong support for [his] allegations of disabling symptoms and limitations." (Tr. 26). But the ALJ did not to explain what objective findings contradicted or undermined what testimony, or otherwise elaborate on how the medical evidence, or lack thereof, undermined Armstrong's credibility. The Court thus concludes that the ALJ did not provid sufficiently clear and convincing reasons for finding Armstrong's subjective testimony not credible.

### D. Remand

While the ALJ's credibility analysis was adequate, the errors discussed above require that this case be remanded. The next question, then, is whether to

remand for further administrative proceedings or for an immediate payment of benefits. According to the Ninth Circuit, the Court should credit evidence as true and remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. The ALJ should clarify what, if any, limitations are incorporated into the residual functional capacity assessment to account for Armstrong's severe mental impairments. In addition, the ALJ is in a better position than this Court to evaluate the medical evidence, and giving the ALJ the opportunity to reevaluate the medical opinions on remand will remedy what this Court has identified as a defect in the original administrative proceedings.

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Armstrong's motion for summary judgment

be granted and the Commissioner's decision be reversed. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion, including reevaluation of Armstrong's credibility, and the opinions of Dr. Van Denburg, Dr. Maddox, and Marbarger. The ALJ should also clarify what, if any, limitations are incorporated into the residual functional capacity assessment to account for Armstrong's severe mental impairments.

DATED this 15th day of September, 2014

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge